UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONALD LEWIS,

                    Petitioner,                    Case Number 01-10252-BC
                                                   Honorable David M. Lawson

v.

BARBARA BOCK,

                    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Ronald Lewis, presently confined at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. He was convicted of second-degree murder, contrary to Michigan Compiled Laws section 750.317, on July 26, 1995 following a jury trial in the Wayne County, Michigan Circuit Court. The trial court sentenced the petitioner to a prison term of twenty-five to fifty years. The petitioner claims that there was insufficient evidence to convict him; the court improperly failed to instruct the jury on the theory of imperfect self-defense; the sentence was based on materially false information that resulted in incorrectly scored sentencing guidelines; the jury was improperly allowed to consider the charge of first-degree felony murder; and his trial and appellate counsel were ineffective. The respondent answers that the petitioner's last three claims are procedurally defaulted and all of the claims are without merit. The Court concludes that the petition must be denied for lack of merit in the grounds presented.

I.

The petitioner was originally charged with first-degree felony murder after he stabbed to death one Jacque Goudeau in the early morning hours of September 25, 1993.  The testimony of several witnesses at trial established that the petitioner pursued Goudeau and stabbed him to death as Goudeau cried out that he was being robbed.  The petitioner testified at trial that he was arguing with Goudeau when Goudeau produced a knife and stabbed him in the hand.  The petitioner claimed that he was able to get the knife away from Goudeau and stabbed him only in self-defense.  The jury found the petitioner guilty of second-degree murder.

The petitioner timely appealed his conviction and sentence, raising the first three claims he lists in his petition for writ of habeas corpus, namely insufficiency of evidence, failure to instruct the jury on the theory of imperfect self-defense, and improper sentencing due to reliance on false information.  The Michigan Court of Appeals affirmed the petitioner's conviction and sentence in an unpublished, *per curiam* opinion.  *See People v. Lewis*, No. 189618 (Mich. Ct. App. Aug. 8, 1997).  The Michigan Supreme Court denied the petitioner's delayed application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Lewis*, No. 110415 (Mich. June 29, 1998).

The petitioner then filed a motion for relief from judgment raising the remaining three claims listed in his habeas petition, that is, that the jury should not have been allowed to consider the charge of first-degree murder, and ineffective assistance of trial and appellate counsel.  The trial court denied the petitioner's claims on the merits.  *See People v. Lewis*, No. 94011561-01 (Wayne County Cir. Ct. Mar. 12, 1999).  The petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal because the petitioner "failed to meet the burden of establishing

-2-

entitlement to relief under MCR 6.508(D)." *People v. Lewis*, No. 223517 (Mich. Ct. App. Aug. 21, 2000). The Michigan Supreme Court likewise denied leave to appeal for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lewis*, No. 117842 (Mich. Feb. 26, 2001).

The petitioner signed and dated his habeas petition on June 7, 2001. In it, he presents the following grounds for relief:

I.  Petitioner's conviction must be vacated because it violates his federal constitutional right to be free from conviction in the absence of proof of guilt beyond a reasonable doubt.

II.  Petitioner Lewis was denied a fair trial when the jury was not instructed that they could find him guilty of voluntary manslaughter under the "imperfect self-defense" theory.

III.  Petitioner was deprived of due process where the sentence was based upon materially false information that was prejudicial whereby the trial judge erred in: (A) allowing OV 3 of the homicide sentencing guidelines to be incorrectly scored; and (B) scoring OV 4 of the homicide sentencing guidelines for aggravated physical injury.

IV.  Petitioner's conviction must be vacated where the jury was permitted to consider the unwarranted charge of first-degree felony murder, which was unwarranted by the proofs.

V.  Petitioner was deprived of the effective assistant [sic] of trial counsel resulting in a violation of due process whereby counsel's performance fell outside the wide range of professionally competent assistance.

VI.  Petitioner was denied his constitutional right to the effective assistance of appellate counsel where his appellate counsel omitted significant and obvious issues.

The respondent argues in an answer to the habeas petition that the petitioner's claims lack merit, are not cognizable, or are procedurally defaulted.

-3-

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

-4-

pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11.  *See also Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

A.

The petitioner's first claim challenges the sufficiency of the evidence produced at trial.  The petitioner alleges that his conviction must be vacated because there was no evidence of malice.  He argues that the jury could have concluded that he acted in self-defense.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship,* 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted).  This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 n.16.  In Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.  *People v. Bailey*, 451 Mich. 657, 669; 549 N.W.2d 325 (1996).

> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  *People v. Aaron*, 409 Mich. 672, 728; 299 N.W.2d 304 (1980).

-6-

*People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868, 878 (1998).

Gregory Wilson and Joi Lewis identified the petitioner at trial as the person they saw stabbing a man with a knife. According to both witnesses, the petitioner chased the man down the street and followed him to a porch where he stabbed the man a few more times. Kerwin Wimberly and Carl Black described the incident similarly, but neither witness was able to say for certain that the petitioner was the aggressor in the altercation. Both witnesses said that the petitioner resembled the man who did the stabbing.

Dr. Lange Davidson, the medical examiner, testified that the victim was 5'6" tall and weighed 115 pounds. The cause of death was approximately sixteen stab wounds in the head, back, and shoulder. He had a blood alcohol level of .17 grams per deciliter of blood at the time of death.

The petitioner testified that he sold drugs for Jacque Goudeau and that they started fighting when Goudeau refused to pay him. The petitioner claimed that Goudeau produced a knife and lunged at him, stabbing him in the hand. The petitioner then grabbed the knife and continued to fight with Goudeau as they ran up the street. The petitioner denied having an intent to kill Goudeau.

The Michigan Court of Appeals denied the petitioner's sufficiency-of-the-evidence claim, stating:

> Defendant next challenges the sufficiency of the evidence, contending that the prosecution failed to negate his claim of self-defense. We disagree.
>
> In Michigan, the killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm. [*People v.*] *Kemp*, 202 Mich. App. [318,] 322 [(1993)]. A defendant is not entitled to use any more force than is necessary to defend himself. *Id*.
>
> We have previously noted that multiple stab wounds to a victim are more consistent with murder than self-defense, and that multiple stab wounds may indicate that the defendant had the intent to do great bodily harm or acted in a manner that created a

-7-

high risk of death or great bodily harm with the knowledge that such was a probable result. *People v. Rushlow,* 179 Mich. App. 172, 179; 445 N.W.2d 222 (1989), *aff'd* 437 Mich. 149 (1991). Here, the excessive stabbing showed defendant's intent to inflict great bodily harm or the intent to create a very high risk of death with the knowledge that the act would probably cause death or great bodily harm. Although it is possible that defendant honestly and reasonably believed that his life was in imminent danger or that there was a threat of serious bodily harm when Jacque stabbed defendant in the hand, viewing the evidence in the light most favorable to the prosecution, we conclude that defendant used excessive force to defend himself. A rational trier of fact could conclude that sufficient evidence had been presented to support all of the elements of second-degree murder beyond a reasonable doubt.

*Lewis*, No. 189618, at 2.

The state court's conclusion was a reasonable application of *Jackson* in light of (1) the petitioner's admission that he fought with Goudeau, (2) evidence that Goudeau was stabbed sixteen or seventeen times, primarily in the back of his head and shoulder, whereas the petitioner received one or two injuries, and (3) testimony that the petitioner pinned down Goudeau, pursued Goudeau after he broke away, and then stabbed Goudeau again. There was sufficient evidence from which a rational juror could have found that the petitioner caused the victim's death, and he acted with the intent to cause great bodily harm and without justification. Although the petitioner argues that his actions were justified, the jury was free to disbelieve his testimony and credit the testimony of witnesses who heard the victim cry out that he was being robbed. The petitioner is not entitled to relief on this ground.

### B.

The petitioner's second claim is that he was denied a fair trial because the trial court failed to honor his request to instruct the jury on imperfect self-defense. Looking to Supreme Court precedent, the Sixth Circuit has held that

> a defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." A necessary corollary of this holding is the rule that a

-8-

> defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions.

*Taylor v. Withrow*, 288 F.3d 846, 851-52 (6th Cir. 2002) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (additional citations omitted). "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988); *see also Newton v. Million*, 349 F.3d 873, 878 (2003). However, a defendant does not possess "the right to offer any defense, nor to demand [that] a jury be instructed on any theory." *Taylor*, 288 F.3d at 853.

A petitioner is entitled to habeas relief if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). On habeas review, this Court is bound by the state court's interpretation of state law. *Bradshaw v. Richey*, 126 S. Ct. 602, 604 (2005).

The trial court instructed the petitioner's jury on felony murder, second-degree murder, voluntary manslaughter, and self-defense, but not imperfect self-defense. The Michigan Court of Appeals explained the law as follows:

> In Michigan, the doctrine of imperfect self-defense applies only where the defendant would have had a right to self-defense but for his or her actions as the initial aggressor. *People v. Amos*, 163 Mich. App. 50, 57; 414 N.W.2d 147 (1987). Imperfect self-defense is a qualified defense which can mitigate an act of second-degree murder to voluntary manslaughter because it serves to negate the element of malice. *Amos, supra*; *People v. Kemp*, 202 Mich. App. 318, 323; 508 N.W.2d 184 (1993).

-9-

In determining whether an initial aggressor is entitled to a claim of imperfect self-defense, the focus is on "the intent with which the accused brought on the quarrel or difficulty." *Kemp*, 202 Mich. App. at 324. A defendant is not entitled to invoke the doctrine of imperfect self-defense if the circumstances surrounding the incident indicate that he initiated the confrontation between himself and the victim with the intent to kill or do great bodily harm. *Id*. Furthermore, under Michigan law, a defendant is not entitled to claim imperfect self-defense if he acted with excessive force. *Id*., at 325.

Here, the jury was instructed on *self-defense* because, according to defendant's testimony, Jacque (the victim) was the initial aggressor, and defendant attacked Jacque in self-defense. If Jacque was the initial aggressor, then the *imperfect self-defense* theory is inappropriate. However, had defendant been the initial aggressor, the evidence here showed that defendant acted with excessive force. He continued to stab Jacque while they were fighting in the street, and after Jacque broke free and ran away, defendant followed after him with the knife. Defendant repeatedly stabbed Jacque on the porch, stopping only when threatened at gunpoint by a witness. Jacque sustained sixteen stab wounds, while defendant was stabbed once in the hand. Clearly, there was no error in refusing to give an imperfect self-defense instruction.

*Lewis*, No. 189618, at 1-2.

That decision in not contrary to and does not unreasonably apply federal law. The trial court instructed the petitioner's jury on self-defense, which was consistent with the petitioner's testimony of the events leading to the victim's death. An instruction of imperfect self-defense would have been appropriate only if evidence produced at trial suggested that the petitioner had been the initial aggressor; no such evidence was produced. The petitioner is not entitled to the writ of habeas corpus on the basis of his second claim.

## C.

The petitioner's third claim is that his sentence was based on materially false information, namely that offense variables three and four of the sentencing guidelines were improperly scored. The Michigan Court of Appeals declined to address this issue because, under state law, appellate review is unavailable for "an alleged misinterpretation of the guidelines and/or instructions

regarding how the guidelines should be applied." *Lewis*, No. 189618, at 3 (citing *People v. Mitchell*, 454 Mich. 145, 175-77 (1997)).

The same is true on habeas corpus review. Although the petitioner had a constitutional right not to be sentenced on "misinformation of constitutional magnitude," *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)), the essence of his argument is that the trial court mis-scored the sentencing guidelines by finding that the petitioner had an intent to kill or to do great bodily harm and that the petitioner inflicted "aggravated physical injury" on the victim. "A federal court may not issue the writ on the basis of a perceived error of state law," *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and a claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Moreover, the petitioner had an opportunity to challenge the guidelines scoring at the sentence proceeding. He has not shown that the trial court relied on "extensively and materially false" information that he had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). The trial court's determination of the facts was reasonable. 28 U.S.C. § 2254(d)(2). In addition, the sentence is within the statutory penalty for second-degree murder in Michigan: life or any term of years. Mich. Comp. Laws § 750.317. Accordingly, no deprivation of due process occurred, and the petitioner is not entitled to habeas relief on the basis of his third claim.

### D.

The petitioner's fourth, fifth, and sixth claims were raised in his motion for relief from judgment. The state argues that these claims are procedurally defaulted because both the Michigan Court of Appeals and the Michigan Supreme Court held that the petitioner "failed to meet the burden

of establishing entitlement to relief under MCR 6.508(D)." *People v. Lewis*, No. 117842 (Mich.

Feb. 26, 2001); *People v. Lewis*, No. 223517 (Mich. Ct. App. Aug. 21, 2000). The doctrine of

procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas review
> of the claims is barred unless the prisoner can demonstrate cause for the default and
> actual prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files

an untimely appeal, *id.* at 740, if he fails to present an issue to a state appellate court at his only

opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a

state-procedural rule that required him to have done something at trial to preserve his claimed error

for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed

verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199,

202 (6th Cir. 1996). Application of the cause-and-prejudice test may be excused if a petitioner

"presents an extraordinary case whereby a constitutional violation resulted in the conviction of one

who is actually innocent." *Rust*, 17 F.3d at 162; *see Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state-procedural rule

applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with

that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner

v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from

which the petitioner sought review must have invoked the state-procedural rule as a basis for its

decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally,

the procedural default must rest on an "adequate and independent" state ground. *Howard v.*

*Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson*, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust*, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In this case, it appears that a state procedural rule was in place during the relevant time, namely that a Michigan court may not grant relief upon a motion for relief from judgment if the grounds for relief in the motion could have been raised on appeal from the conviction or in a prior motion. *See* Mich. Ct. R. 6.508(D). The Sixth Circuit Court of Appeals has held that Rule 6.508(D) is an independent and adequate ground for procedural default. *Howard*, 405 F.3d at 477; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

It also appears that the Michigan courts actually enforced the procedural rule in this case. The Sixth Circuit has interpreted a form order denying a motion for relief from judgment, such as

-13-

those issued by the Michigan Court of Appeals and the Michigan Supreme Court in this case, as an "explained" state court judgment denying the motion for relief from judgment on a procedural ground. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1937 (2005); *Luberda v. Trippett*, 211 F.3d 1004, 1006 (6th Cir. 2000). Such interpretation of the form order is somewhat troublesome in this case, however, where the petitioner's claim of ineffective assistance of appellate counsel is certainly not procedurally defaulted pursuant to Michigan Court Rule 6.508(D) because it does not fit within the three grounds upon which a court must deny relief. *See Munson*, 384 F.3d at 315 n.2. Moreover, post-conviction motions are more suitable for addressing claims of ineffective assistance of counsel. *See United States v. Barrow*, 118 F.3d 482, 494 (6th Cir. 1997) (noting that in the federal forum, "'[t]he more preferable route for raising an ineffective assistance of counsel claim is in a post-conviction proceeding under 28 U.S.C. § 2255,' whereby the parties can develop an adequate record") (quoting *United States v. Carr*, 5 F.3d 986, 993 (6th Cir.1993)). In this case, the petition raised the claims of ineffective assistance of trial and appellate counsel in state post-conviction proceedings analogous to the procedure set out in section 2255.

Therefore, the Court will address the merits of the ineffective assistance of counsel claims, but the jury instruction issue is subject to the cause-and-prejudice test. The analysis of the remaining three claims overlaps, however, because the petitioner argues that cause for his failure to raise the jury instruction issue on direct appeal was the ineffective assistance of appellate counsel.

The petitioner asserts in his sixth claim that his appellate counsel was ineffective for failing to raise his fourth and fifth claims on direct appeal:  that the trial court erroneously instructed the jury on first-degree felony murder; and that trial counsel was ineffective. Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level of a constitutional

-14-

violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002). In fact, a "claim of ineffective

assistance of [appellate] counsel . . . can serve as both cause and prejudice, excusing a procedural

default in an underlying substantive claim." *Franklin v. Anderson*, __ F.3d __, __ (docket no. 03-

03636, 03-3697, 6th Cir. Jan. 9, 2006), *slip opinion* at 3. The ineffective assistance of counsel claim

must not itself be procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

However, in this case, the petitioner raised his claim of ineffective assistance of appellate counsel

in his motion for relief from judgment in the state court and properly exhausted the issue.

A court evaluating a claim of ineffective assistance of appellate counsel should consider a

number of factors, among them:

1. Were the omitted issues "significant and obvious?"
2. Was there arguably contrary authority on the omitted issues?
3. Were the omitted issues clearly stronger than those presented?
4. Were the omitted issues objected to at trial?
5. Were the trial court's rulings subject to deference on appeal?
6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7. What was the appellate counsel's level of experience and expertise?
8. Did the petitioner and appellate counsel meet and go over possible issues?
9. Is there evidence that counsel reviewed all the facts?
10. Were the omitted issues dealt with in other assignments of error?
11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999); *see also Franklin*, ___ F.3d at ___, *slip*

*opinion* at 15. With these factors in mind, the Court will briefly evaluate a claim that appellate

counsel failed to raise on appeal: the fourth claim of the habeas petition.

The petitioner's fourth habeas claim alleges that the jury should not have been permitted to

consider the unwarranted charge of first-degree felony murder. The petitioner essentially presents

this argument as a sufficiency-of-the-evidence claim.

-15-

The Supreme Court has recognized that the improper submission of a greater charge to the jury can violate the Due Process Clause even when the jury convicts of a lesser charge. *See Price v. Georgia*, 398 U.S. 323 (1970). Error in that instance is not harmless. This Court has held that a constitutional violation warranting habeas relief could occur if the jury is allowed to consider a greater charge not supported by sufficient evidence, even when a conviction of a lesser offense results. *See Williams v. Jones*, 231 F. Supp. 2d 586, 594 (E.D. Mich. 2002) (holding that "if the trial judge's submission of the first-degree murder charge in the petitioner's trial violated the constitution, the error would not have been harmless because the jury may have improperly considered, and compromised from, a charge to which it never should have been exposed. To hold otherwise would constitute an unreasonable application of *Price*").

However, this is not such a case. The charge of first-degree felony murder was supported by evidence presented at the trial, and the jury instruction on the charge of felony murder did not render the petitioner's trial fundamentally unfair. *See Estelle*, 502 U.S. at 72. In Michigan, the elements of felony murder are:

> (1) the killing of a human being (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice] (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute, including armed robbery].

*People v. Carines*, 460 Mich. 750, 758-59, 597 N.W.2d 130 (1999) (citing *People v. Turner*, 213 Mich. App. 558, 566, 540 N.W.2d 728 (1995)) (alterations in original).

Sufficient evidence of malice and armed robbery was presented to support an instruction on first-degree felony murder. Kerwin Wimberly, Gregory Wilson, Carl Black, and Joi Lewis testified that, during the stabbing, the victim cried out that he was being robbed. Kerwin Wimberly heard

-16-

the victim saying, "[H]elp me, help me, he's trying to rob me, he's robbing me." Tr. I at 35. Gregory Wilson heard the victim say, "[H]elp me, help me, he's trying to rob me." Tr. II at 28. Carl Black heard something similar; he also saw the victim take off his coat and heard the victim offer it to the attacker. *Id*. at 46, 48-49. Joi Lewis heard the victim say, "[S]omebody please help me, somebody's trying to rob me, please help me." *Id*. at 71, 76. The petitioner's cousin, Gwendolyn Shaw, testified that the petitioner explained the cut on his hand by saying that he had been fighting with a guy named Jacque about money matters. The petitioner himself testified that the fight was about money. Finally, Dr. Davidson testified that the victim died from multiple stab wounds, six of them in the back of the victim's head, and six of them in the victim's back and the back of his left shoulder.

Evidence that the petitioner pursued the victim and stabbed him sixteen or seventeen times suggested that he intended to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. Although there was no evidence that the petitioner took anything from Goudeau, the evidence presented would have allowed the jury to conclude that the petitioner killed Jacque Goudeau during the commission of an attempted robbery and that he possessed the requisite intent. Thus, the petitioner's claim is without merit.

Because the petitioner's fourth claim is without merit, appellate counsel was not ineffective for failing to raise the claim on direct review. As noted below, the failure of appellate counsel to raise on direct appeal the ineffectiveness of trial counsel is equally meritless. These issues were not "significant and obvious," and they were not stronger than the issues that counsel did raise on appeal. *Mapes*, 171 F.3d at 427; *see also Franklin*, *slip opinion* at 15. Therefore, the petitioner has

-17-

not established cause for his procedural default.  The petitioner's claim of ineffective assistance of appellate counsel also fails on the merits.  Because the petitioner has not demonstrated any cause for his procedural default, this Court need not assess prejudice. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

E.

The petitioner's fifth claim alleges that trial counsel was ineffective for failing to interview prosecution witnesses prior to trial, for recommending that the petitioner accept a plea bargain, and for advancing a misidentification defense when the petitioner testified that he stabbed the victim in self-defense.  A petitioner claiming a violation of his constitutional right to counsel as a result of counsel's ineffective assistance must fulfill both prongs of the *Strickland* test: he must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that he was prejudiced by counsel's deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 688, 693 (1984).

1.

The petitioner contends that his trial attorney failed to interview prosecution witnesses before trial.  As a result, alleges the petitioner, defense counsel presented a weak misidentification defense and was unprepared for the only viable defense the petitioner had – imperfect self-defense.

Counsel's performance in this regard was not objectively unreasonable.  Several of the key prosecution witnesses gave statements to the police, and defense counsel cross-examined three prosecution witnesses at the preliminary examination.  The trial strategy of challenging the identifications of the witnesses was a sound trial strategy because many of the witnesses had not identified the petitioner in a line-up or photo array.  Counsel elicited testimony from Kerwin

-18-

Wimberly that he never looked at a lineup or a photo array and that, at the preliminary examination, he could not say with certainty that the petitioner had been the attacker he saw; Wimberly could only say that the petitioner fit his general description of the attacker.  Gregory Wilson admitted that he was not shown a lineup or pictures, and the first time he saw the petitioner after the attack was at the preliminary examination, where he identified the petitioner.  Carl Black noted that the petitioner fit the general description he gave of the attacker and claimed to have picked the petitioner out of a photographic lineup, although the police record of his viewing the pictures read "no I.D."  Tr. II at 57.  Joi Lewis testified that she recognized the petitioner during the stabbing as someone she had seen in the neighborhood, but admitted that she testified at the preliminary examination that she did not recognize the petitioner because she was afraid of testifying against him.  Counsel was not objectively unreasonable in demonstrating to the jury that no one conclusively and consistently identified the petitioner as the attacker.

Even assuming that defense counsel should have interviewed the witnesses before trial, the petitioner has not shown that he was prejudiced by his attorney's alleged deficiency.  *See Strickland*, 466 U.S. at 687.  The misidentification defense was supported by trial counsel's cross-examination of the witnesses, and the petitioner has not shown that the defense would have benefitted from further questioning of the witnesses.

2.

The petitioner also faults his attorney for advising him to plead guilty.  However, counsel's advice to the petitioner that he should plead guilty was certainly reasonable.  The plea agreement would have allowed the petitioner to plead guilty to second-degree murder with the sentence to be set by the trial court.  Because the petitioner could have been convicted of felony murder, an offense

-19-

punishable by life imprisonment without the possibility of parole, defense counsel's recommendation to plead guilty to an offense that offered the possibility of parole was not unreasonable.  Furthermore, the petitioner has not established that he was prejudiced by counsel's performance because the petitioner ultimately refused to accept a plea agreement.

3.

The petitioner also asserts that trial counsel was ineffective for concentrating on the defense of misidentification, which conflicted with the petitioner's testimony that he stabbed the victim in self-defense.

It appears that trial counsel relied on the misidentification defense as long as it was uncertain whether the petitioner would testify.  On the first two days of the trial, defense counsel cross-examined the eyewitnesses concerning their ability independently to identify the petitioner as the man who did the stabbing.  At the end of the second day of trial, after trial counsel had questioned the witnesses extensively about their ability to identify the petitioner and after the petitioner had been counseled and refused a plea agreement, the trial court asked the petitioner whether he was satisfied with the advice and counsel of his attorney.  The petitioner answered, "Yes. I have been." Tr. II at 117.  At the beginning of the third day of trial, counsel stated that the petitioner had not yet decided whether he would testify and asked the court to exercise its discretion in excluding the petitioner's record of two prior crimes to be used in impeaching the petitioner.  The following exchange took place:

> THE COURT:  If it comes in does that mean that he does not testify?
>
> MR. BURGESS [defense counsel]:  If it comes in my advice to him would be that he not testify.  I don't know what his decision is going to be.
>
> THE COURT:  Let's find out.

-20-

> MR. BURGESS:  Mr. Lewis, if he allows the record in, are you going to testify?  If he allows you to be impeached so the jury knows you were previously convicted of robbery, would you testify?
>
> DEFENDANT LEWIS:  No.

Tr. III at 4-5.  The trial court excluded evidence of the petitioner's prior attempted armed robbery but allowed mention of the petitioner's prior larceny conviction.  At the close of the state's case, the petitioner elected to testify.  The petitioner testified that he and the victim sold drugs together, and on the night of the stabbing the victim refused to pay him.  They started fighting, and the victim lunged at him with a knife, stabbing him in the hand.  "We continued to fight more and more," the petitioner explained, "and I get the knife.  And afterwards we ran up the block fighting.  The fight just went on and on and I left afterwards.  That's about it."  Tr. III. at 19.  In his closing argument, defense counsel asked the jury to find the petitioner guilty of voluntary manslaughter because the petitioner testified that he was very angry with Jacque Goudeau on the night of the homicide but he did not intend to kill Goudeau.  When the trial court asked the petitioner at the sentence proceeding whether there was anything that he wanted to tell the trial court about his attorney, the petitioner responded, "No.  He was great."  Sentencing Tr. at 13.

A reviewing court must evaluate counsel's performance "on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  Counsel's strategy of challenging the identification of the petitioner was not outside the "wide range of professionally competent assistance" considering that the petitioner had not yet decided whether he would testify.  *See ibid.*  The petitioner asserts that counsel should have focused on the theory of self-defense.  However, the only evidence of self-defense was the petitioner's testimony.  If counsel had argued self-defense from the beginning of trial, and the petitioner decided not to testify because both of his

-21-

convictions could be used against him, the defense theory would have been completely unsupported by any evidence at trial.  Furthermore, the petitioner's testimony was not completely supportive of a self-defense theory because the petitioner testified that he was angry with the victim, not that he was afraid of him, as they fought.

Even if counsel's choice to challenge the identifications of the petitioner was objectively unreasonable, the petitioner was not prejudiced because the evidence against him was overwhelming.  All of the eyewitnesses saw an aggressor repeatedly stab the unarmed victim.  A number of eyewitnesses testified that the aggressor continued to stab the other man even when the victim offered his coat to the aggressor.  Carl Black testified that the victim and the killer ran up onto his porch and then:

> He just kept on stabbing him.  I was standing in the doorway looking.  I'm like, no, man, what you doing.  You're killing him.  He just looked at me and he kept on stabbing him again.
>
> By that time I went to my room, came back out with my rifle and pulled it on him and told him to get up.  And he got up and looked at me.  He walked away.

Tr. II at 46.  The petitioner's cousin testified that she saw the petitioner with a cut on his hand and he told her that he cut his hand fighting with "Jacque" over "money matters."  Tr. II at 113.  Thus, trial counsel was not ineffective for focusing on a misidentification defense before the petitioner decided to testify.

### III.

The Court finds that the petitioner's first three claims lack merit because the state court's adjudication of them was not contrary to, or an unreasonable application of, Supreme Court precedent.  The petitioner's fourth claim is barred from review by the doctrine of procedural default.

His fifth and sixth claims alleging ineffective assistance of trial and appellate counsel do not merit habeas relief.

Accordingly, it is **ORDERED** that the application for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: February 2, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 2, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---